Good morning, and may it please the Court. My name is Logan Fancher. I represent the Appellant, MBI. This case involves an oil and gas lease between MBI and Appellee Royalty. The District Court made two mistakes here. The first issue on appeal involves a plain language interpretation of the MBI lease. The MBI lease has two clauses relevant here, the Habendum Clause and the Wellbore Reservation. And issue one involves the interaction or lack thereof between those two clauses. The District Court erred here by construing those clauses in a way that creates a requirement that doesn't exist under the plain language of either clause that MBI have an interest in the oil and gas produced in order to continue the lease into its secondary term. The second issue involves the application and operation of a North Dakota statute, Section 380808. That statute implicates two types of cases, separate tracts cases and separate interest cases. This is a separate tracts case, and the relevance of that is that that section of the statute requires the application of language that oil and gas produced from one tract be deemed for all purposes, production from all the other pooled tracts. The District Court erred by construing this as a separate interest case to which that language does not apply. I'd like to begin with the first issue, which presents, as I said, a straightforward question of contract interpretation. When we're talking oil and gas leases, the same general rules of contract interpretation apply. Contracts are interpreted according to their plain terms. Each term is given meaning, and the contract is construed to give effect to the mutual intention of the parties at the time of contracting. But as this Court recognized in Northern Oil and Gas v. Moen, when we're talking about oil and gas leases, it's also necessary to understand the concepts of spacing and pooling. Pooling is a creature of statute and regulation. When you have multiple different surface owners but one pool of minerals underneath, before pooling and spacing existed, you may have one surface owner that drills a well and is able to drain all of the minerals out underneath each of the other surface owners. Conversely, you may have a race where all the surface owners are putting their own wells into the ground to try to get the minerals before their resources are drained out from under them. That's not ideal for several reasons. One, you have the drainage issue where the correlative rights of the surface owners are being taken away. But two, having many different wells drilled on a unit that's over the same pool of minerals also isn't ideal. It's wasteful and environmentally hazardous. So states implemented regular statutes and regulations for the purpose of protecting those correlative rights and for defeating the need to drill unnecessary wells. So when there's a pool of minerals underneath a plot of land that can be efficiently and economically produced by a single well, a regulatory commission can enter a pooling order, pooling all the resources and surface interests into one unit. And that's what happened here. The North Dakota Industrial Commission pooled all the surface interests in sections three and ten in McKenzie County, North Dakota. And that includes the lease premises that issue in the MBI lease. It includes the Calhoun well bore. And it includes additional land that's not covered by the MBI lease. Now as I understand the timing though, the reservation clause was entered into by the parties after that. Is that correct? And my recollection is the district court thought, all right, the context against which we interpret the intention of the parties is, all that being true, there's now a reservation of rights. Is my understanding correct what the district court did? And if so, why is that wrong? Your understanding is correct in terms of the timing and what the district court did. The difference is that the timing doesn't implicate what the Habendum clause means. The timing is relevant and that's why the well bore reservation exists. The well was already in existence and it was already producing. So when MBI came in, I think it was about two years after that, they included the reservation. And it prevents MBI from saying, the oil and gas produced from that well, we own part of it. It reserves for royalty its ownership of the minerals of the well bore itself and the minerals that are produced from it. The question here is whether that implicates the Habendum clause and whether the reservation operates to exclude that production from continuing the lease. And under the terms of the Habendum clause here, it plainly does not. In general, Habendum clauses in oil and gas leases define the duration of the lease. Leases have both a primary term and a secondary term. The primary term will usually be a set period of years and the secondary term will continue so long as there's production from either the lease premises or acreage pooled with it. And there are a couple different types of Habendum clauses. Some will only require production from the lease premises. They won't say anything about acreage pooled with the lease premises. When some Habendum clauses contemplate that acreage will be pooled and include additional language that says that the lease will be held in through its secondary term so long as there's production from the lease premises or acreage pooled therewith. What's the interaction between the lease term, which is a time, and the Habendum clause in terms of the effect of the Habendum clause on the term? Yes, so the term there will be the first primary term, which is a set number of years, two years, or three years. And within that primary term, typically a lease will provide the producer that if there's no production in that first period of years, then there's no concern under the lease. When it goes into the secondary term, there has to be some production of oil and gas in order for the lease to continue to be effective. So the secondary term can go on indefinitely so long as minerals are continuing to be produced. And that's what we have here. The Habendum clause in the MBI lease says that the lease will continue through its secondary term so long as there is either production from the lease premises or production from the acreage pooled with the lease premises. Why isn't it reasonable to interpret that the production has to be connected to the contracting parties and not someone else producing? Well, because that's not what the words say first. But also second, it makes sense in the context of pooling where you have acreage. For example, the MBI lease, when it says acreage pooled therewith, that means that the lease can be held from production that's on acreage that MBI doesn't even have a lease on so long as it's within the same pooled unit. And again, the reason that it makes sense to just have one well producing is because that's the purpose of the pooling orders, to prevent MBI or any other lessee from having to drill additional or unnecessary wells simply to hold their lease or to prevent other landowners from having to drill wells to maintain their correlative rights to the minerals underneath their property. And if you only had that clause, the Habendum clause, I think your argument is pretty strong. But you've got the reservation clause. And why isn't, I think you started your argument to say something about the interest. Well, that directly addresses the interest. It says it reserves all interest to royalty in that Calhoun well. So why wouldn't that include any interest as related to the Habendum clause as well? Because there isn't any interest related to the Habendum clause. What the Habendum clause sets out is a condition precedent. It doesn't grant MBI any interest in the production from the Calhoun well. What it says is if there is production from the leased premises or acreage pooled with it, then the lease continues. But isn't that an, wouldn't that be an interest that MBI would have in that Calhoun well? And by the reservation clause, that's been reserved entirely to royalty? No, I don't think it is appropriate to consider that as an interest. It's just a... Why not? Interest would be a legal share of the production, a legal share of something. Something if you want to take the bundle of sticks metaphor, a stick that you could take and then reconvey. That's just not what the Habendum clause is doing. It's just saying if event A happens, then your lease continues. And I think helpful to look at the Wellbore reservation in detail to help explain its operation and effect. I'm not going to read the whole thing because it's fairly lengthy. But the Wellbore reservation consists of three sentences. And every single one of those sentences ends in language limiting the effect of the Wellbore reservation to simply preserving royalties ownership of the Wellbore and the minerals produced from it. So the first sentence, which concerns the royalties right title and interest into the Wellbore, ends in language, as are necessary to vest in lessor ownership of all of lessor's right title and interest in the Wellbore and the production therefrom. The second sentence, and put a pin in that for now because I'm going to come back to that for the second issue, relates to unitization and pooling and reserves royalties interest to the extent only that they relate to or affect lessor's interests in the Wellbore. And the third sentence similarly ends in language limiting the reservation as is necessary for retention of lessor's interest in the Wellbore. My point here being there is no language anywhere in this Wellbore reservation that relates to lease duration. There's no language here that says production from the Calhoun Wellbore even though it's on acreage. Counsel, what was the financial arrangement for the payment for the lease? Yes, there was an upfront payment. And then after that, once the lease continues, there would be payment for production. Now this reservation removes the financial aspect for the Calhoun Well out of it. There have been additional wells that have been drilled since. But when the lease, when the period ended in what, 2016? Yes, sir. What transferred between the parties subsequent to that financially? None between these parties. But again, that's what's contemplated by the lease and is not uncommon in the context of oil and gas. And really that's the intent of the Wellbore reservation. When you have the well that's already existing and producing, you don't want there to be an interaction there because the party's intended for this to affect. Because MBI was not around when the well was first drilled and started producing, MBI doesn't need to take an ownership interest in it. It just doesn't implicate the habendum clause whether the lease continues or not. So really the issue here on this first point is that the district court in analyzing this contract construed these clauses in a way that essentially says 1 plus 1 equals 3. It took a Wellbore reservation that preserves royalties ownership of the minerals produced from the Calhoun well. And it combined them to create a requirement that doesn't exist under the plain language of either term that requires MBI to have an interest in the oil and gas produced in order for it to hold the well. I want to quickly address the Schenck case. Both the parties cite to Schenck. We think why this case is different. The other side thinks Schenck is helpful because they think it's controlling. I want to flag that Schenck involves materially different lease language than what we have here. In the Schenck case, the primary clause the court was looking at was an unless clause that said unless a well is drilled, the lease is going to terminate. There is no similar clause in the MBI lease. Second, the Schenck lease included express language requiring production by the lessee in order to hold the lease. Again, that language is completely absent here. Moreover, imputing that language into the MBI lease really doesn't make any sense because of the additional language in the MBI lease subendum clause that permits production or permits the lease to be held based on production on acreage pooled with the lease premises. I.e., the MBI lease expressly contemplates that the lease can be held by production from lands that MBI does not have a lease on. By the lessee, but on land that you don't have a lease on wouldn't make sense as applied to this lease. Counsel, you're well within your rebuttal time. You can continue if you like or reserve. I'm going to make one more point before I sit down and just quickly on my second issue, the separate tracts versus separate interests. The MBI lease identifies the lease premises and then removes from it the wellbore, the physical surface tract space where the wellbore is. Tracts can either be big or small. There is no defined term. In fact, in the Shane case they expressly contemplate that the size doesn't matter. It's a different surface area. When those different surface areas are pooled, any production from one part must be deemed for all purposes production from all of them. For that separate and independent reason, production from the Calhoun well should be holding this lease. I'll reserve the remainder of my time for my rebuttal if there are no further questions. Thank you, Mr. Fletcher. Mr. Moss, is there going to be a sharing of time? Yes, Your Honor. I'm not as tall as Mr. Fletcher. Good morning and may it please the Court. My name is William Moss and I represent Appellee Royalty Interest Partnership. For three years MBI was a lessee under an oil and gas lease granted by royalty for the express purpose of producing oil and gas. But MBI ignored that purpose and simply sat on its hands. MBI drilled no wells, produced no oil, found no gas, bore no costs, participated in no operations, initiated no pooling, received no proceeds, and paid no royalties. Now in the face of this total inaction, MBI asked this Court to allow it to rely on the actions of others to keep its lease alive. But neither the lease nor the law permits such free riding. It's undisputed that there was no production on the lands at issue here other than from the Calhoun well. Production that was reserved to royalty via a bespoke reservation. How do we look to the language of the documents here to come to the conclusion that you are when counsel makes a logical argument that the terms in the agreements themselves support their position? I would disagree with that, Your Honor, because I think the rules of contract interpretation which apply to this actually support our interpretation because all terms of the lease have to be read together. The interpretation MBI has put forth focuses solely on the habendum clause without reading that clause in connection with all the other terms of the lease. For instance, as the Court questioned earlier, the habendum clause controls the duration of the lease, the term, how long the lease lasts. And it has two portions, a primary term and a secondary term. In order to determine what obligations MBI has during each of those respective terms, you have to look to the rest of the terms of the lease. And so you have to harmonize all those terms in order to give purpose, intent, and meaning to every which one. And when you read the bespoke reservation in connection with the habendum clause, it's clear that any interest in the production from this well was reserved to royalty. And that included any interest in that production perpetuating MBI's lease. But speaking of the reservation, it expressly reserved to royalty all right, title, and interest in the production from the Calhoun well. This means that only royalty was given any interest in that production, including any interest in that production perpetuating the lease. But even without the reservation, production from the Calhoun well cannot perpetuate MBI's lease because North Dakota law is clear. MBI played no role in bringing that production about. Now before I begin, I want to address one question Justice Smith asked the counsel for repellent. And your question was about the financial arrangement between the parties. And I think that makes, that provides a lot of context here. So as I mentioned earlier, two terms, a primary term and a secondary term. And this is what's considered a paid up lease, meaning that MBI paid up front for the right in order to sit on its hands and not do anything for the first three years for that primary term. Now under the other traditional, what are known as unless clauses, you get a primary term, which means, you know, defined period that the lease will last. But a party has to either conduct operations or pay a bonus or some type of consideration every year to get, to get to the next year of that primary term. Now the secondary term then, which is part of the Abendum Clause, that requires the lessee to cause or contribute to production. And we'll get to that in a moment. But that is the financial arrangement between the parties. There's an upfront cash payment for a set amount of time in which MBI could or could not conduct operations. And then after that, it was required to do something in order to keep the lease alive. But as the opposing counsel points out, the reservation, I'm sorry, the Abendum Clause doesn't say that. It doesn't say that it is MBI who must be doing the drilling. The Abendum Clause is written in the passive voice. That's correct. But if we read all the terms of the lease together, it is clear that the intent of the parties was for MBI to cause or contribute to production in order to perpetuate the lease. So then what does the phrase or on acreage pooled therewith do? What's that, what's that doing there? Now normally, Your Honor, that would capture a broader production from a broader set of other than the premises granted by the lease. But we have two things here. First, we have the reservation, right? A reservation or North Dakota law, excuse me, is something to be deducted from the thing granted. So here, MBI, excuse me, a royalty reserved all right title and interest not only to the well board, its production, and the associated mineral state. So that means that that was deducted from the grant. Okay. And giving, okay, if except that argument kind of back before you get there, you suggested that the Abendum Clause, if you read it as you would like us to read it, says that MBI had to be the one who was doing the drilling. And I guess my question was what's or on acreage pooled therewith doing. I understand your reservation clause argument that that reserved that Calhoun well, but are you saying that that's sort of surpluses? It's not doing any work? No, Your Honor. I'm not saying that at all. What I'm saying is when you read that on the pooled therewith language, right, which captures other language in the context of the entire lease, particularly the Purpose Clause, which is the very first recital of the lease. The purpose of the lease was for exploration and production of oil, gas, and other minerals. So when you read that in context with the reservation, the Purpose Clause in context with the reservation and the other terms of lease, all which have required MBI to take affirmative action to perpetuate the lease. Why have that in there? I guess I'm curious as to if I understand opposing counsel's position is that's not always in an Abendum Clause. And so if you add it, what I'm hearing from your argument is, well, when you read the entire agreement, those words don't mean anything. But that can't be right, can it? Your Honor, I apologize if that's the impression I'm giving. That is not my intent. I'm saying when you read the entire terms of lease, it implies what the purpose of that passive voice in the Abendum Clause means. Right? So the Abendum Clause is written in passive voice, meaning lease will continue for as long as production, there's production from the lease premises or acreage pooled therewith. It does not say who must cause the production. Could MBI cause the production on acreage pooled therewith? It could, if it contributed to the drilling of a well, if it initiated pooling. But it didn't take any of those actions, Your Honor. It sat back and let others. When you say it initiated pooling, a different set of pooling, like, but on the pooled acreage. Correct, Your Honor. The point is MBI had to take some action with respect to these lands or lands pooled therewith in order to satisfy the purpose of the lease. Otherwise, if the court were to allow MBI to simply free ride and take advantage of others' work, that would permit MBI to hold the lease for mere speculation. Right? It can sit on the lease, it's not required to do anything for the duration of the, in perpetuity, which goes against the express purpose written in the front of the very first part of the lease, which is to procure the exploration and production of oil and gas. Now, I see that I'm going over my time. So, I will, unless there are any further questions, I will defer. I'll pass that over to Mr. Hogan. And thank you for your time. Thank you, Mr. Morris. Mr. Hogan? Thank you, Your Honor. Chris Hogan on behalf of Appellee Grayson Milbakken. May it please the Court. I wanted to start with the note that you had, Judge Kelly, about what's the reason for the language of or pooled therewith in the Abendum Clause. Had there been another well that was actually drilled on the premises, it's not necessarily the case that in order to keep the lease alive that MBI would have had to drill the well. Instead, a lot of times under the way North Dakota works, you are offered up the opportunity to participate in wells that are drilled on acreage that is pooled therewith. So, if another operator were to come in and say, we are drilling a well, everyone would get an election notice and they would have the opportunity to either put in money to actually participate in the drilling or to actually do what's called a risk penalty, where they essentially agree not to receive funds from the well up until it hits a certain percentage, usually 300 or 500 percent. And that is also considered to be contribution. So, there is a way here where wells drilled off the leased premises would have a way for them to participate. That just never took place here. But that's the reason that's being contemplated in this language. And I do think to... And so, they don't have to do the drilling. That's what that's work... Exactly. That's the work it's doing. Yeah. And so, it's not just the case that they would have to drill. They either have to drill or contribute. So, North Dakota recognizes that there are ways for lessees to contribute without actually putting the drill bit in the ground themselves. They have to take some kind of risk. They have to put some money up or agree to not take the benefits of the well. MBI did none of these things. And while I think it's important to note that oil and gas leases are treated like contracts, which is what MBI said, oil and gas leases also do have some default rules that apply. And one of those default rules that applies here is this interesting situation about the passive voice, where even though an oil and gas lease does not necessarily use the phrase, by the lessee, when it refers to drilling. It talks about it in a way that my English teacher in high school would have said, well, we don't know who's doing the drilling, right? The thing is, because of the purpose language that exists in oil and gas leases and it exists in this lease too, that the purpose of the lease is for mining, exploring, or operating and producing oil and gas, that that purpose language is read along with the requirement that the lessee in the lease actually be the one doing something. And it's not just me saying this. Shank obviously says this for North Dakota. But when Shank drew that conclusion at the North Dakota law, it was looking at Oklahoma law. It was looking at Texas law. It looked at Mississippi law. It looked at Fifth Circuit law. And since that time, there have been numerous other cases that have come out that have also made the same point. I think a really important one, if your honors are interested just conceptually in some of these concepts, is the Simerex versus Anadarko case. There is a factual distinction there in that it takes place in Texas, which is a state that does not have the pooling regime that North Dakota has. But that case takes a look and addresses the very argument that MBI's counsel made, that somehow the fact that we don't have an unless clause makes this a completely different situation because we only have a thereafter clause. And the court looks at that and says, no, that's not the case at all. The fact is the same purpose and the same reason that we have for oil and gas leases exist regardless of what kind of lease we're talking about when it comes to either an unless or thereafter. And the purpose is to make the lessee do something, to either drill or to contribute. And at the end of the day, the interpretation that MBI is seeking from this court is that they don't have to do anything. Judge Smith, you made an excellent question in terms of what's the relationship that's happened with these parties for the last decade. And the answer is nothing, right? I mean, there's been no royalties that have been paid. There's been no benefits to royalty interest partners for having this lease on its property. It's purely sitting there in order to presumably free ride on the production from others, which is exactly what Schenck says we are not supposed to do. The purpose of the lease is to get oil and gas production started on the property or to have the lessee contribute to that oil and gas production. And that simply didn't take place here. I also do think that it's important to note that the way MBI reads the reservation is that... So what is their incentive? What is the MBI's incentive to maintain this lease if they're not going to? How do they benefit from keeping it? So essentially they're able just to tie up the acreage at that point and essentially contain an option on the property to drill whenever they want. That's something that frankly every oil and gas operator would love, would be a lease that continues indefinitely so that whenever they choose to come in and drill a property that they would have the ability to do it. But of course lessors don't want that to be the case. The lessor says, I'm going to give you the property for a short period of time in which you need to drill or complete a well. And if you don't, that's fine, but then I get the property back. That's the reason for the timing and for the having these primary and secondary terms. What MBI would do is essentially eliminate the secondary term and say that we get to keep this lease in force and effect indefinitely for as long as someone else is producing, in this case from the Calhoun well, despite the fact that we never contributed to that Calhoun well. And that's the reason they want to hold on to the lease, but it's not a proper reason to have the lease. So if you look at the language in the reservation, I do think that right title and interest is very important. When you talk about right title and interest, the Cavalier Court case in North Dakota says this is the broadest way that we can talk about real property rights. There is no larger way to talk about it. And that's the way that the parties chose to talk about their reservation. And so when MBI says that we're reserving royalty benefits from the well, that's their interpretation of that. But if that had been what they wanted, they would have said that. They would say you're going to get to keep the royalties. Instead what they said is all right title and interest. And then they even went a step further, which frankly they didn't need to do, and said that the lessor is going to have all right title and interest in this Calhoun well. And then we recognize there might be pooling or communitization or unitization agreements that are out there, and those will remain in force and effect except as they relate to the lessor's interest in this well. So they expressly contemplated a situation where these agreements might affect that lessor's interest in the well and removed them. I see my time's expired, so if there's no further questions. Thank you. Thank you, Mr. Hogan. Mr. Fancher, your rebuttal. Thank you. I'll go quick here. On the second point, the council referenced the unitization clause in the wellbore reservation. I asked you to put a pin in that earlier. The reason is that clause doesn't say anything about what happens with the production from the Calhoun well. It solely relates to the wellbore itself, the physical space. And if the parties wanted to include production there, they could have because they did on the immediately previous sentence. Second, what council are saying with the, well, this permits MBI to hold the lease indefinitely. That's breaking a fundamental rule of contract interpretation that contracts are interpreted at the time the parties entered into. We know with the benefit of hindsight that the Calhoun well has continued producing, but that was not a guarantee the parties had at the time. I'm out of time. Thank you. Thank you, Mr. Fancher. The court wishes to thank all council for participating in argument before the court this morning. We'll continue to study the matter and render decision into course. Thank you. Council may be excused.